IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DREW & NICOLE BARNABEI, h/w, AND** : | | **CIVIL ACTION** |
| **STONEBRIDGE HISTORICAL SOCIETY,** : | | |
| : | | |
| **v.** : | | |
| : | | |
| **CHADDS FORD TOWNSHIP** : | | **NO. 15-0046** |

MEMORANDUM

**Restrepo, J.**                                                                                         **August 24, 2015**

      Plaintiffs Drew and Nicole Barnabei and Stonebridge Historical Society (collectively, "Plaintiffs") filed this action against Defendant Chadds Ford Township (the "Township") for failure to grant a reasonable accommodation under the Fair Housing Act ("FHA"), the Rehabilitation Act of 1973 ("Rehab Act"), and the American with Disabilities Act ("ADA"). Plaintiffs also claim violations of the Equal Protection Clause of the United States Constitution, pursuant 42 U.S.C. § 1983, and of Article I, Section 26 of the Pennsylvania Constitution. Before the Court is the Township's Motion to Dismiss the Complaint (ECF Document No. 4) on ripeness grounds and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the Court concludes that Plaintiffs' claims are not ripe, Defendant's motion is granted and the Court does not reach Defendant's remaining arguments.

      **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

      Drew and Nicole Barnabei own a property located at 681 Webb Road in Chadds Ford, Pennsylvania. Compl. (Doc.1) ¶ 1. This property is located in an area zoned by the Township as an R-1 residential district. *Id*. ¶ 19, Ex. B. The Barnabeis intend to lease this property to the Stonebridge Historical Society, doing business as Stonebridge Recovery ("Stonebridge"), a non-

1

profit corporation that would offer substance-free housing and rehabilitation services to former substance abusers.  *Id.* ¶¶ 2, 11-14.

On September 30, 2014, and again on October 13, 2014, the Barnabeis applied for a Certificate of Use and Occupancy, so they could lease their property to Stonebridge.  *Id.* ¶ 18, Ex. A.[1]  The Barnabeis' requests were denied by the local zoning officer via letter dated October 14, 2014, which stated that the requested use was "commercial/residential" and therefore not permitted in an R-1 district.  *Id.* ¶ 19, Ex. B; Mot. Hr'g Tr. 6:15-7:4, June 23, 2015 ("Tr."). On October 24, 2014, the Barnabeis wrote a letter to the Township, disputing the rationale behind the denial and asking for a "reasonable accommodation."  Compl. ¶ 20, Ex. C.; Tr. 7:6-17.  In addition, the Barnabeis appealed the decision of the Township's zoning officer to the Chadds Ford Zoning Hearing Board on November 6, 2014.  *Id.* ¶ 21.  On November 25, 2014, Plaintiffs requested that their appeal to the Zoning Hearing Board be continued and left in pending status.  Tr. 3:17-4:20.

In December 2014, while their appeal to the Zoning Hearing Board was pending, Plaintiffs sent two more letters asking the Township to grant the Certificate of Use or grant a "reasonable accommodation."  Compl. ¶ 24; Ex. E.  By letter dated January 2, 2015, the Township again denied the Barnabeis' application on the grounds that "the proposed use is not permitted in the R-1 District."[2]  *Id.* ¶ 24, Ex. F.  At Plaintiffs' request, their appeal to the Chadds Ford Zoning Hearing Board still remains pending while they pursue relief in federal court.  Tr. 3:17-4:20.

---

[1]   Exhibit A to Plaintiffs' Complaint reflects that the second application filed by the Barnabeis was dated October 13, 2014.  Exhibit B indicates that another application may have been filed by Plaintiffs' counsel's office on October 6, 2014, the second application date alleged in the Paragraph 18 of the Complaint.

[2]   Although the timeline of events suggests this letter was dated January 2, *2015*, both Plaintiffs' Complaint and the attached exhibit appear to incorrectly list the date of this letter as January 2, *2014*.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In deciding a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007) (citation and internal quotations omitted).  "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993).  The Court may consider the allegations in the Complaint, any exhibits attached thereto, matters of public record, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[3]

## III.    DISCUSSION

The ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . and also to protect the [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v.*

---

[3]     The Third Circuit has recognized ripeness challenges in the context of motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Stanton v. City of Philadelphia*, 2011 WL 710481, at *2 n.2 (E.D. Pa. Mar. 1, 2011) (citing cases).  The parties appear to agree that Rule 12(b)(6) applies to Defendant's ripeness challenge; Defendant's Motion mentions Rule 12(b)(1) in the title, but the motion itself and supporting memorandum of law focuses exclusively on Rule 12(b)(6).  In light of the case law and the parties' agreement, the Court will analyze Defendant's ripeness argument under the Rule 12(b)(6) standard only.

*Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). To decide whether a claim is ripe, the court balances "'(1) the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" *Id.* at 341 (quoting *Abbott Labs*, 387 U.S. at 149.).

Defendants argue that none of Plaintiffs' claims are ripe, because the Chadds Ford Township Zoning Hearing Board has not yet been afforded an opportunity to entertain Plaintiffs' appeal and reach a decision. *See* Def.'s Br. (Doc. 4) 9-10; Tr. 4:21-5:1. Plaintiffs respond that they are not required to file a complaint in state court or otherwise exhaust state remedies before filing in federal court; their claims became ripe as soon as the zoning officer first denied their requested use of the property. *See* Pl.'s Opp. Br. (Doc. 5) 8-11; Tr. 6:2-6.

### A.    Equal Protection claims

Plaintiffs allege in their Complaint that the Township violated their rights under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution and under Article I of the Pennsylvania Constitution by prohibiting Stonebridge from offering rehabilitation services at 681 Webb Road.[4] Compl. ¶¶ 46-51. Plaintiffs do not allege any suspect classification nor do they allege that the Township violated any fundamental right; rather, they allege that the Township's denial of their requested use was arbitrary, capricious, and irrationally discriminatory. *Id.*

In *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1288 (3d Cir. 1993), the Third Circuit addressed when an equal protection claim becomes ripe in the context of a local land-use

---

[4]    The parties agree that Plaintiffs' claim under the Pennsylvania Constitution should be analyzed according to the same framework as their Fourteenth Amendment claim. Def.'s Br. 11; Pls.' Opp. Br. 12.

dispute in Pennsylvania. The court held that where, as here, "no suspect classification is alleged and no fundamental right infringed . . . a plaintiff's equal protection claim is not ripe . . . until the zoning authority has taken *final action*." *Taylor*, 983 F.2d at 1294 (emphasis added). The court defined "final action" as the zoning hearing board's "final adjudication" under the variance and review procedures laid out in the Pennsylvania Municipal Planning Code.[5] *Id.* at 1292, 1295. The court reasoned that "[u]ntil the Township has fully and finally considered how a specific landowner is treated under the zoning scheme, a federal court cannot determine whether the landowner has been dissimilarly treated nor whether such treatment is rationally related to a legitimate government purpose." *Id.* at 1295. A decision by the zoning officer, the court found, could not "represent the Township's final interpretation," as the zoning officer is only empowered under the Code to administer zoning ordinances according to their literal terms, and he or she lacks the ability to permit changes in use that do not comply with the local zoning ordinances. *Id.* at 1292.

Here, Plaintiffs admit that they have not received a disposition from the Township's Zoning Hearing Board. Tr. 3:24-4:1. In fact, Plaintiffs *initiated* the continuance of the Zoning Hearing Board's review while they sought a remedy from this Court. Tr. 3:17-4:1. Consequently, under *Taylor*, Plaintiffs' equal protection claims are unripe and must be dismissed.[6]

---

[5] The parties agree that the Pennsylvania Municipal Planning Code applies here. *See* Tr. 17:20-18:1, 22:7-13.

[6] Even if Plaintiffs' equal protection claims were ripe for judicial review, it is unlikely they would have survived Defendant's motion to dismiss. Plaintiffs plead no facts regarding "similarly situated individuals," a necessary element for equal protection claims. *See Congregation Kol Ami v. Abington Twp.,* 309 F.3d 120, 137 (3d Cir. 2002) (explaining that "the first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone.").

### B. Fair Housing Act, Rehabilitation Act, and American with Disabilities Act claims

Plaintiffs claim that the Township's decision not to grant a reasonable accommodation amounts to housing discrimination on the basis of disability in violation of the FHA, the Rehab Act, and the ADA. *See* Pls.' Opp. Br. 16. These claims are ripe, according to Plaintiffs, because the Township zoning officer denied their request for a reasonable accommodation, and this "initial denial" is sufficient to support a claim under each statute.[7] Tr. 6:2-6. Defendants counter that Plaintiffs' "failure to accommodate" claims are not ripe for the same reasons as Plaintiffs' equal protection claims.[8]

Prior to the Third Circuit's decision in *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment*, 284 F.3d 442 (3d Cir. 2002), it was uncertain in this Circuit when FHA claims based on local land-use decisions became ripe for judicial review. *Compare, e.g., Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307, 319 (E.D. Pa. 2001) (finding an FHA reasonable accommodation claim ripe and explaining that a violation of the FHA occurs "when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings") (citation and internal quotations omitted), *with Marriott Senior Living Servs., Inc. v. Springfield Twp.*, 78 F. Supp. 2d 376, 380, 384-88 (E.D. Pa. 1999) (determining that an FHA reasonable accommodation claim was not "final" and therefore not ripe, because the local zoning authority did not have the opportunity to consider a formal proposal, hold hearings, and write the reasons for its denial). But to the extent there was tension between prior decisions addressing the issue, this tension was resolved by *Lapid-Laurel*.

---

[7] The parties agree the analysis of Plaintiffs' FHA claim for "failure to accommodate" also applies to Plaintiff's Rehab Act and ADA claims. *See* Def.'s Br. 13. Pls.' Opp. Br. 16; *see also McKivitz v. Twp. of Stowe,* 769 F. Supp. 2d 803, 823-24 (W.D. Pa. 2010) (analyzing FHA, Rehab Act, and ADA claims in accordance with the requirements of the FHA).

[8] For ease of reference, the Court will hereinafter refer to Plaintiffs' "failure to accommodate" claims under all three statutes simply as Plaintiffs' "FHA claims."

In *Lapid-Laurel*, the Third Circuit joined the Tenth and Fourth Circuits in holding that a federal court reviewing an FHA reasonable accommodation challenge to the decision of a local land-use board must limit its review to the administrative record, composed of the materials presented to the board, unless the land-use board actually prevented the plaintiff from presenting sufficient evidence in support of his or her claim. *Id.* at 450, 452. Limiting the federal court's review in this manner essentially compels plaintiffs to "present all of the evidence they have that would justify why an accommodation is necessary under the [FHA] to the local land-use board," *Lapid-Laurel*, 284 F.3d at 451 (citing *Keys Youth Services, Inc. v. City of Olathe*, 248 F.3d 1267 (10th Cir. 2001)), because if plaintiffs fail to do so, they will be prohibited from introducing evidence in support of their FHA claims in federal court. This framework prevents municipalities from being held liable for refusing to grant reasonable and necessary accommodations where those municipalities "never knew the accommodation[s] w[ere], in fact, necessary." *Keys Youth Services,* 248 F.3d at 1275. Perhaps most important, it provides local land-use boards with the "initial opportunity to provide reasonable accommodations" and "comports with the tradition in American law that land use decisions are quintessentially local in nature." *Lapid-Laurel*, 284 F.3d at 451-52.

Of course, as the court noted in *Lapid-Laurel*, this framework assumes that plaintiffs who bring reasonable accommodations claims against localities in federal court will have first sought relief from and presented evidence to the local land-use board. *See id.* at 451 n.5. Otherwise, the reviewing court would necessarily *have* to "consider materials from outside the nonexistent administrative record" in order to properly determine whether a requested accommodation was reasonable and necessary. *Id.*

Here, due to their *own* decision to delay the hearing, Plaintiffs have not presented their claims to the local land-use board.  Tr. 3:17-4:1.  Plaintiffs have not, for that matter, presented *any* local authority in Chadds Ford Township with "all of the evidence they have that would justify why an accommodation is necessary under the [FHA]."  *Lapid-Laurel*, 284 F.3d at 450.  The only "administrative record" that this Court could even arguably consider under *Lapid-Laurel* consists of several brief letters that largely concern procedural matters and a few, simple, standard forms completed by Plaintiffs.  Therefore, to properly decide Plaintiffs' failure to accommodate claims at this stage and determine what is "reasonable and necessary," this Court would be forced to examine materials outside of this "record."  This situation is precisely what the court in *Lapid-Laurel* sought to avoid.  *Id.*  At bottom, this Court cannot agree that the letter exchange here renders Plaintiffs' failure to accommodate claims ripe for judicial review.  For these reasons, Plaintiffs' FHA, Rehab Act, and ADA claims are dismissed.

## IV.    CONCLUSION

In sum, the Plaintiffs' claims are unripe and will be dismissed without prejudice to renew, if appropriate, once the Chadds Ford Zoning Hearing Board has reached a final disposition on Plaintiffs' appeal.

An implementing Order follows.